Michael M. CONWAY, Plaintiff,

v.

UNITED STATES INTERNAL REVENUE SERVICE, Defendant.

Civ. A. No. 77–1079.

United States District Court, District of Columbia.

Jan. 12, 1978.

Francis O. McDermott, Washington, D. C.; Michael M. Conway, admitted pro hac vice, Chicago, Ill., for plaintiff.

Gregory S. Hrebiniak, Atty., Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM–ORDER

GASCH, District Judge.

Plaintiff herein seeks access to certain Internal Revenue Service (IRS) documents pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1976). On September 8, 1976, plaintiff requested from the IRS

(1) all statements of policy, final decisions and instructions to staff relating to the Ontario Mining Tax ("OMT") imposed by the Province of Ontario, Canada, particularly the creditability of the OMT as a foreign tax credit under Section 901 of the Internal Revenue Code and (2) any orders, summaries or written records of a meeting held on April 24, 1975 between IRS personnel and Dr. Thomas A. Mohide, the Ontario Mining Assessor who administers the OMT.

In its initial search, the defendant found two documents it deemed responsive to the request, but it notified plaintiff by letter on June 7, 1977, that it would not produce either of them. On June 20, 1977, plaintiff filed this action. As a result of discussions

between the parties, the IRS conducted another search of its files and found additional documents bringing the total number at issue in this case to forty.

These forty documents generally appear to fall within one of three categories, but all were generated in connection with two technical advice memoranda (TAM)[1] dealing with the creditability of the Ontario Mining Tax as a foreign tax credit under section 901 of the Internal Revenue Code. The three categories of documents are:

(1) the two technical advice memoranda and the documents constituting the background file for each;

(2) a proposed revenue ruling based on the first TAM and documents generated in the course of its consideration by various officials of the IRS (this led to promulgation of the second TAM); and

(3) additional documents generated during consideration of proposed revenue rulings dealing with the creditability of the tax after issuance of the second TAM.

The case is now before the Court on cross-motions for summary judgment. The issues presented to the Court essentially are whether the documents within category one are exempt from disclosure at this time because of the effect of the Tax Reform Act of 1976[2] and whether the documents in categories two and three are exempt from disclosure because they are documents exempted by other statutes[3] or are interagency memoranda,[4] or both.

■ The threshold issue concerns the possible lack of subject matter jurisdiction by this Court to grant plaintiff's request for access to the documents within category

one. This issue arises out of section 1201 of the Tax Reform Act of 1976,[5] which added a new section 6110 to the Internal Revenue Code providing a complex statutory framework for public disclosure of "any written determination and any background file document relating to such written determination." I.R.C. § 6110(a). A "written determination" is defined as "a ruling, determination letter, or technical advice memorandum." I.R.C. § 6110(b)(1). A "background file document" is defined to include

the request for that written determination, any written material submitted in support of the request, and any communication (written or otherwise) between the [IRS] and persons outside the [IRS] in connection with such determination . . . received before issuance of the written determination.

I.R.C. § 6110(b)(2). These definitions clearly encompass the documents described in category one above. The general rule is that these documents are to be open to the public pursuant to regulations prescribing the place for inspection. There is an exception to this rule, however. Subsection (h) addresses written determinations and related background file documents that were issued pursuant to a request made before November 1, 1976. It provides that these documents are to be made "available to public inspection at the earliest practicable date *after* funds for that purpose have been appropriated and made available to the [IRS]."[6] I.R.C. § 6110(h)(2) (emphasis added). The two technical advice memoranda and the background documents at issue here were both requested prior to November 1, 1976. Therefore, the express lan-

---

1. Technical Advice Memoranda provide written guidance from the IRS National Office to its district officers on request in connection with an audit or claim for refund or credit.

2. Act of October 4, 1976, Pub.L. No. 94–455, 90 Stat. 1520.

3. 5 U.S.C. § 552(b)(3) (1976).

4. *Id.* § 552(b)(5).

5. Act of October 4, 1976, Pub.L. No. 94–455, § 1201, 90 Stat. 1660.

6. Although some of this information was available under the Freedom of Information Act at the time this section was enacted, the Congress was aware that a number of problems remained in making this private body of tax law available to the public generally. Because the courts had been given no guidance on these issues, Congress decided they should be resolved through legislation rather than through litigation. S.Rep.938, 94th Cong., 2d Sess. 305–06 (1976), U.S.Code Cong. & Admin.News 1976, p. 3439.

guage of subsection (h) would apply, requiring plaintiff to await for disclosure under this provision.[7]

Plaintiff submits, however, that section 6110 does not apply because the two exceptions to the exclusivity provision of section 6110 permit disclosure in this case. That provision provides:

> *Exclusive remedy.*—Except as otherwise provided in this title, or with respect to a discovery order made in connection with a judicial proceeding, the Secretary shall not be required by any Court to make any written determination or background file document open or available to public inspection, or to refrain from disclosure of any such documents.

I.R.C. § 6110(*l*). Plaintiff argues that an order granting disclosure pursuant to an FOIA request can be interpreted as a "discovery order made in connection with a judicial proceeding." This argument is without merit, however, because the legislative history of section 6110 clearly indicates that Congress intended the provisions of this section to replace those of the FOIA in this area. S.Rep. 938, 94th Cong., 2d Sess. 314–15 (1976); see H.R.Rep.1515, 94th Cong., 2d Sess. 474 (1976), U.S.Code Cong. & Admin.News 1976, p. 4118. Plaintiff also argues that this exceptive provision applies because the effective date of the Tax Reform Act is a provision "in this title," and therefore it should not apply to FOIA requests prior to that effective date.[8] Although at first blush this argument appears to have merit, Congress also addressed this point, and its resolution is contrary to plaintiff's position.

Congress was aware that its enactment of section 6110 would have an effect upon FOIA requests then pending.[9] Therefore, it added to the Act a provision which states:

> *Effect Upon Pending Requests.*—Any written determination or background file document which is the subject of a judicial proceeding pursuant to section 552 of title 5, United States Code [*i. e.*, FOIA], commenced before January 1, 1976, shall not be treated as a written determination subject to subsection (h)(1), but shall be available to the complainant along with the background file document, if requested, as soon as practicable after July 1, 1976.

Tax Reform Act of 1976, Pub.L.No.94–455, § 1201(b), 90 Stat. 1667. Moreover, in the floor debate, when Senator Long, Chairman of the Senate Committee on Finance, was explaining the conference report to the Senate, he was specifically asked about this point by Senator Hansen. Senator Long's reply was that section 6110 would not affect FOIA cases then pending in the courts. The focus of both section 1201(b) and the exchange between Senators Long and Hansen was the effect the new section 6110 would have on FOIA cases already in litigation.[10] They did not address the effect the

---

7. Congress apparently was aware that a substantial cost would be incurred in making available those documents that had been prepared prior to the effective date of this Act. Thus, it intended for the IRS to direct its initial efforts at making new written determinations immediately available to the public and to make old ones available "on a last-in, first-out basis" only when Congress provided the funds for it. S.Rep.938, 94th Cong., 2d Sess. 311 (1976), U.S.Code Cong. & Admin.News 1976, p. 3741. The defendant has indicated it will begin to make these earlier written determinations available to the public in early 1978. Internal Revenue Service, Public Affairs Division, News Release (Sept. 28, 1977).

8. The effective date of the Tax Reform Act was November 1, 1976, and plaintiff's FOIA request was filed with the defendant on September 8, 1976.

9. Indeed, it was the uncertainty as to the full impact of the FOIA in this area that led to this legislation. See S.Rep.938, 94th Cong., 2d Sess. 304–05 (1976); H.R.Rep.1515, 94th Cong., 2d Sess. 474 (1976).

10. This exchange between the two Senators was as follows:

> Mr. Hansen. [A] question has arisen over the treatment of certain pending [FOIA] cases under the new rules governing disclosure . . . under section 1201(a) of the bill, which adds section 6110 to the revenue code . . . . [Am I] correct . . . in assuming that under section 1201(b) of the bill, . . . technical advice memorandums [and] background files . . . which were or are the subject of a judicial proceeding under the [FOIA] are not made subject to these new rules on disclosure? In other

new provisions would have on requests that had been submitted to the agencies but were not acted upon nor the subject of judicial proceedings until after the new law became effective. The conscious preferential treatment of FOIA requests already in a litigious posture and the neglect of FOIA requests in any other posture logically leads to the conclusion that Congress intended the new provisions to preclude the courts from exercising their jurisdiction over further requests for this kind of information under the FOIA. Instead petitioners for this information were to rely only on their new statutory access under the Internal Revenue Code.[11]

As previously noted, the Court's conclusion that the Tax Reform Act of 1976 eliminates jurisdiction to disclose IRS "written determinations" and their "background file documents" does not dispose of this case. There are still other documents requested by plaintiff that remain unaffected by this recent legislation. As to these, defendant contends that disclosure is not required because of the exemptive provisions of FOIA.

■ The first exemption raised by defendant is that for inter-agency memoranda.[12] That exemption, by rough analogy, encompasses the principles applicable to discovery issues generally, such as the privilege of secrecy for the governmental deliberative process, and the attorney-client and attorney work-product privileges. *NLRB v. Sears Roebuck & Co.,* 421 U.S. 132, 149–50, 154, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *EPA v. Mink,* 410 U.S. 73, 86, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). Defendant asserts that each of these privileges applies to all or some of the remaining documents. Plaintiff does not deny the applicability of the privileges nor claim that he is nevertheless entitled to the documents. Rather, he requests that the documents be edited and that segregable summaries be turned over to him. Both the statute[13] and the case law[14] direct that such factual material be

words, are cases such as Fruehauf Corp. against Internal Revenue Service, Supreme Court docket 75–679, in any way adversely affected by the changes contained in section 1201(a) of the bill by reason of section 1201(b)?

Mr. Long. [I]n answer to the Senator's question, if the Supreme Court or other Federal court, in a pending freedom of information case, affirms a taxpayer's rights to disclosure of private letter rulings, technical advice memorandums, background files, indexes and card files or other related communications and correspondence, section 1201(b) assures that section 1201(a) will in no way impede or deter the court ordered disclosure as to all the information sought in the pending cases. Similarly, if a pending freedom of information case is decided against the taxpayer, the taxpayer must look to the new law for its disclosure rights.

122 Cong.Rec.S.16023 (daily ed. Sept. 16, 1976). *See generally* S.Rep.938, 94th Cong., 2d Sess. 315 (1976).

11. *See Durant, Mankoff, Davis & Wolens v. IRS,* No.C.A. 3–76–0318–F (N.D.Tex., Apr. 26, 1977) (dismissing case upon motion of defendant for lack of subject matter jurisdiction because of IRC § 6110(*l*)). Plaintiff offers the recent decision in *Fruehauf Corp. v. IRS,* 566 F.2d 574 (6th Cir., 1977), 41 AFTR 2d 78–310 (Dec. 15, 1977), as support for its argument that this Court can still order the documents in category one to be disclosed under FOIA. In *Fruehauf* the plaintiff also was seeking docu-

ments within the scope of section 6110, but the Sixth Circuit held that the Tax Reform Act did not preclude disclosure in that case. *Id.* at 78–312. That case, however, was already in litigation as of January 1, 1976, and so was expressly within the exemptive language of the Act. Indeed, it was one of the cases pending at the time the legislation was passed that caused section 1201(b) to be included. *See* note 10, *supra.* Thus, it is no support for the proposition that the Court can order disclosure for a case in which suit was initiated after January 1, 1976.

12. That provision states that FOIA does not apply to:

inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency . . . . .

5 U.S.C. § 552(b)(5) (1976).

13. The statute provides:

Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.

5 U.S.C. § 552(b) (1976).

14. *E. g., Mead Data Central, Inc. v. Department of Air Force,* 184 U.S.App.D.C. 350, 368, 566 F.2d 242, 260 (1977); *National Courier Ass'n v. Board of Governors of the Federal Reserve System,* 170 U.S.App.D.C. 301, 314, 516 F.2d 1229, 1242 (1975); *Schwartz v. IRS,* 167 U.S.App. D.C. 301, 303, 511 F.2d 1303, 1305 (1975).

released. Prior to addressing this segregability issue, however, it is necessary to consider defendant's argument on the other exemption it raises.

Defendant submits that the documents requested also contain return information and therefore may not be disclosed because of the (b)(3) exemption which provides that FOIA does not apply to matters "specifically exempted from disclosure by statute."[15] Section 6103 of the Internal Revenue Code as amended by the Tax Reform Act of 1976 is cited as such a specific statutory exemption. Section 6103(b)(2) defines "return information" as

> (A) a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense, and

> (B) any part of any written determination or any background file document relating to such written determination (as such terms are defined in section 6110(b)) which is not open to public inspection under section 6110,

but such term does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer.

■ Defendant asserts that a few of these documents consist totally of return information and that the remaining documents contain some return information plus additional material. It maintains, however, that all of the documents are exempt in their entirety. The only support defendant has for this total exemption argument is its interpretation of Congress' intent as gleaned from the legislative history of the 1976 Tax Reform Act. The Court finds that legislative history to be inconclusive, however. More significantly, defendant's argument is clearly contrary to the intent of FOIA. The statutory provision defendant cites as a (b)(3) exemption prohibits disclosure of return information, not all documents that may contain some such information. The FOIA exemptions are to be construed narrowly. *Vaughn v. Rosen,* 157 U.S.App.D.C. 340, 343, 484 F.2d 820, 823 (1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). There must be more than some suggestion of Congressional intent that was not articulated in the statute to outweigh the unequivocal mandate of FOIA that segregable material be disclosed from a document also containing exempt material.

■ The issue thus becomes whether the documents contain any factual material that may be segregated and disclosed to plaintiff in spite of the presence of other material that may be exempt because of either the (b)(3) or (b)(5) provisions. Defendant contends that there are no factual portions that can be segregated from the rest of the document without reflecting on the deliberative process.[16] In a recent opin-

---

**15.** That provision states in full that FOIA does not apply to matters that are

specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3) (1976).

**16.** In *Montrose Chem. Corp. v. Train,* 160 U.S. App.D.C. 270, 491 F.2d 63 (1974), this circuit noted that the distinction between deliberative and factual materials may sometimes be overly simplified because there may be instances in which purely factual information may nevertheless reflect the workings of the deliberative process. It is the process of deliberation that is to be protected and not just the material generated in that process. 160 U.S.App.D.C. at 278,

ion, this circuit noted that a party requesting information is helpless to counter an agency's contention that there is no segregable material within the documents requested that may be disclosed. *Mead Data Central, Inc. v. Department of Air Force,* 184 U.S.App.D.C. 350, 368, 566 F.2d 242, 260 (1977). Thus, the burden is on the agency to justify its non-segregability claim, and this burden should not be transferred to the Court by making a generalized claim of exemption and submitting the documents for *in camera* inspection. *Id.*

The defendant herein, however, has not supported its claim with any justification. This presents the Court with one of two alternatives: review the documents *in camera* and determine for itself whether any portions are segregable, or require the agency to submit a detailed justification if it intends to press its claim [17] and then evaluate that justification. In either case, the Court's responsibility is one of de novo review. 5 U.S.C. § 552(a)(4)(B). Therefore, in order to expedite the resolution of this litigation, the Court has chosen the first alternative.

The Court finds that the documents do contain some factual material that must be disclosed to plaintiff. In each instance the material is essentially of the same nature: it relates the historical development of the Ontario Mining Tax. After setting forth that factual background, the documents then discuss whether the tax qualifies as a foreign tax creditable to the taxpayer's tax liability under the United States Internal Revenue Code. In the Court's view, this historical description is neither "return information" nor factual material that will reveal the substance of defendant's deliberations on the tax issue before it.[18]

Specifically, the defendant must edit from the documents and release to the plaintiff the following segments:

| Document No. | Segregable Portion |
|---|---|
| 3 | Part entitled "The Operation of the 1970 and 1971 Acts" on pages 2–5. |
| 4 | Part entitled "The Operation of the 1970 and 1971 Acts" on pages 2–6. |
| 5 | Part entitled "The Operation of the 1970 and 1971 Acts" on pages 2–8. |
| 8 | Part entitled "The Operation of the 1969, 1970, and 1971 Acts" on pages 2–9 (excluding footnote 1). |
| 9 | From page 1, 2d paragraph to page 7, 1st full paragraph. |
| 11 | From page 1, 2d paragraph to page 7, 1st full paragraph. |
| 13 | From page 1, 2d paragraph to page 7, 1st full paragraph. |
| 14 | From page 1, 2d paragraph to page 7, 1st full paragraph. |

In editing these portions from the documents, the defendant may also delete any indications of emphasis it may have added to them as such emphasis could reflect its deliberations by showing what facts it deems to be of special importance in resolving the tax issue involved.

Having considered the parties' cross-motions for summary judgment, their respective cross-oppositions, and the arguments of counsel, and having inspected the documents at issue, and for the reasons set forth above, it is by the Court this 12th day of January, 1978.

ORDERED that plaintiff's motion for summary judgment be, and hereby is, granted in part and denied in part; and it is further

ORDERED that defendant's motion for summary judgment be, and hereby is, granted in part and denied in part; and it is further

---

491 F.2d at 68; *accord, Mead Data Central, Inc. v. Department of Air Force,* 184 U.S.App.D.C. ——, ——, 566 F.2d 242, 256 (1977).

**17.** In *Mead Data Central,* the court of appeals noted that this burden is a heavy one and that the agency could determine that the resource allocation required to meet it may outweigh any benefits gained by the secrecy, thereby prompting the agency to drop its claim and

disclose the material. 184 U.S.App.D.C., at —— ——, 566 F.2d at 260–261 (1977).

**18.** The Court notes that the second technical advice memorandum which is not being disclosed here but which will be released under the provisions of section 6110 sometime in 1978, also contains a narrative on the historical development of the Ontario Mining Tax.

ORDERED that defendant release to the plaintiff the segregable portions of the documents as described on pages 11–12 of this Memorandum-Order.