# United States Court of Appeals
## For the First Circuit

No. 06-1489

DANIEL E. CARPENTER,

Plaintiff, Appellant,

v.

UNITED STATES DEPARTMENT OF JUSTICE, UNITED STATES ATTORNEY FOR
THE DISTRICT OF MASSACHUSETTS,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Morris E. Lasker, U.S. District Judge]

Before

Lipez, Circuit Judge,
Cyr, Senior Circuit Judge,
and Singal,* District Judge.

Malik W. Ghachem for appellant.
Peter D. Keisler, Assistant Attorney General, with whom
Michael Sullivan, United States Attorney, Leonard Schaitman and
Steve Frank, Attorneys, Appellate Staff, Civil Division,
Department of Justice, were on brief for appellees.

December 12, 2006

*Of the District of Maine, sitting by designation.

**SINGAL**, **District Judge.**      Plaintiff, Daniel Carpenter ("Carpenter"), filed a Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2006), request with the United States Attorney's Office ("USAO") for the District of Massachusetts requesting documents that a third party provided to the USAO in connection with the government's investigation and prosecution of Plaintiff's business activities.   This appeal is taken from a district court order granting summary judgment for Defendants, the United States Department of Justice and the USAO for the District of Massachusetts ("the Government"), and thereby denying Carpenter's FOIA request.   On appeal, Carpenter maintains that the requested materials are subject to disclosure because the public interest in disclosure outweighs any privacy interest maintained in the materials.   We affirm the district court's order.

## I.   Background

By letter dated August 18, 2004, Carpenter filed a FOIA request with the USAO in Boston.   Carpenter petitioned for materials that a third party, John Koresko, Esq. ("Koresko"), allegedly provided to the USAO in support of the Government's prosecution of Carpenter's business activities.[1]   According to

---

[1] Prior to the FOIA request, Carpenter was indicted and subsequently tried on fourteen counts of wire fraud in violation of 18 U.S.C. § 1343 and five counts of mail fraud in violation of 18

Carpenter, he and Koresko are direct competitors in the field of welfare benefit plan design and administration. Carpenter alleges that Koresko provided information and materials to the USAO, on which his indictment was based, and that he needs the materials to ensure that Koresko did not provide false or misleading materials. The FOIA request, therefore, sought to compel disclosure of "[a]ll documents, correspondence, records or files provided by or obtained from [Koresko]" that related to Carpenter's businesses, welfare plans or criminal prosecution, or "reflect any conversation with [Koresko]."[2]

_____

U.S.C. § 1341. On July 27, 2005, a jury found Carpenter guilty on all counts. The conviction was overturned, however, and a new trial ordered. In the motion for acquittal, Carpenter argued that there was insufficient evidence to convict. The district court found sufficient evidence but granted a new trial on the ground of prosecutorial misconduct in the closing argument. United States v. Carpenter, 405 F. Supp. 2d 85, 103 (D. Mass. 2005).

[2] Carpenter requested the following materials:

> a. All documents, correspondence, records, or files provided by or obtained from John Koresko, V, Esq. that refer to, relate to, or reflect (a) Daniel E. Carpenter; (b) Benistar Property Exchange Trust Co., Inc.; (c) Benistar, Ltd.; (d) Benistar 419 Plan Services, Inc.; (e) Benistar 419 Plan; (f) Benistar Admin Services, Inc.; (g) the investigation leading to United States v. Carpenter, Criminal No. 04-10029-GAO; or (h) the case itself after the indictment issued.

> b. All documents that refer to, relate to, or reflect any conversation with John J. Koresko, V, Esq.

After several rounds of correspondence and because the Government failed to respond to the FOIA request within the twenty-day statutory time limit, 5 U.S.C. § 552(a)(6)(A), Carpenter filed this FOIA suit on January 28, 2005. The Government responded to both the FOIA request and the lawsuit by declining to either confirm or deny the existence of the requested materials (a "Glomar response"[3]) and asserting that any such records would be exempt from disclosure.[4] Carpenter moved

---

[3] The "Glomar response" derives its name from a ship, the *Hughes Glomar Explorer*, "built (we now know) to recover a sunken Soviet submarine, but disguised as a private vessel for mining manganese nodules from the ocean floor." Bassiouni v. CIA, 392 F.3d 244, 246 (1st Cir. 2004). See generally Phillippi v. CIA, 546 F.2d 1009 (D.C. Cir. 1976).

[4] The Executive Office for the United States Attorneys ("EOUSA") responded to the FOIA request by stating:

> EOUSA can neither confirm nor deny that such records exist. If in fact, they did exist, all such records as you have requested cannot be released absent express authorization and consent of the third party, Mr. Koresko, proof that he is deceased, or a clear demonstration that the public interest in disclosure outweighs the personal privacy interest and that significant public benefit would result from the disclosure of the requested records . . . . These records are also categorically exempt from disclosure pursuant to sections (b)(6) and (b)(7)(C) of the Freedom of Information Act, 5 U.S.C. 552.

Although the Government officially continues to refuse to confirm or deny the existence of any materials or documents responsive to the FOIA request, both the district court and this Court have conducted an in camera review of the materials. In addition, the government referred to "e-mails" in its brief. (Appellee's Br. 27.) In short, the arguments presented on appeal

-4-

for summary judgment on June 17, 2005 and the Government cross-moved for summary judgment on July 1, 2005.[5]

After conducting an <u>in</u> <u>camera</u> review, the district court denied Carpenter's motion for summary judgment and granted the Government's cross-motion for summary judgment via an Endorsement Order.[6] The district court held that the materials at issue were exempt from disclosure under Exemption 7(C) of the FOIA, which exempts from disclosure "records or information compiled for law enforcement purposes but only to the extent that" such information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552 (b)(7)(C).

Carpenter filed a timely motion for reconsideration, arguing that the court had erred in relying upon <u>Quinon</u> v. <u>FBI</u>, 86 F.3d

---

proceed on the assumption that responsive documents exist. Thus, this Court's analysis similarly proceeds based on the premise that the Government has at least some documents responsive to Plaintiff's FOIA request.

[5] On June 17, 2005, Carpenter also filed an "emergency" motion for discovery in his criminal proceeding, seeking the same documents as those in the FOIA request. <u>United States</u> v. <u>Carpenter</u>, Crim. No. 04-10029-GAO (Docket # 80). On June 30, 2005, the district court ordered that the USAO submit the disputed documents for an <u>in</u> <u>camera</u> review. On February 17, 2006, the court denied *nunc pro tunc* the motion for discovery.

[6] The district court, however, held the government's Glomar reply insufficient where neither national security nor foreign intelligence was at issue.

1222 (D.C. Cir. 1996), in reaching its decision.  On December 12, 2006, the district court denied Plaintiff's motion.  This appeal followed.

Our review of the district court's determination that the materials are exempt from disclosure is de novo.  Church of Scientology Int'l v. U.S. Dep't of Justice, 30 F.3d 224, 228 (1st Cir. 1994).  Our discussion begins with a general review of the FOIA standards and its exemptions.

## II.  Discussion

The FOIA was intended to expose the operations of federal agencies "to the light of public scrutiny." U.S. Dep't of the Air Force v. Rose, 425 U.S. 352, 372 (1976); Providence Journal Co. v. U.S. Dep't of the Army, 981 F.2d 552, 556 (1st Cir. 1992) (noting that the FOIA seeks to prevent "the development and application of a body of 'secret law'").  The basic policy of full agency disclosure within the FOIA furthers the right of citizens to know "what their government is up to," U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773 (1989) (quoting EPA v. Mink, 410 U.S. 73, 105 (1973) (Douglas, J., dissenting)), and promotes an informed citizenry, which is vital to democracy.  NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978).  Thus, in response to a FOIA request, a governmental agency must make promptly available to any person

-6-

those materials in the possession of the agency, unless the agency can establish that the materials fall within one of nine exemptions.  5 U.S.C. § 552(a)(3).

To effectuate the goals of the FOIA while safeguarding the efficient administration of the government, the FOIA provides that certain categories of materials are exempted from the general requirements of disclosure.  Id. § 552(b); Providence Journal Co., 981 F.2d at 556.  The nine FOIA exemptions are to be construed narrowly, with any doubts resolved in favor of disclosure.  U.S. Dep't of Justice v. Julian, 486 U.S. 1, 8 (1988); Providence Journal Co., 981 F.2d at 557.  The government bears the burden of proving that withheld materials fall within one of the statutory exemptions, 5 U.S.C. § 552(a)(4)(B); Orion Research, Inc., v. EPA, 615 F.2d 551, 553 (1st Cir. 1980), and district courts are required to make de novo determinations as to the validity of the asserted exemptions.  5 U.S.C. § 552(a)(4)(B); see also Reporters Comm., 489 U.S. at 755; Providence Journal Co., 981 F.2d at 556-57.

Exemption 7(C) formed the sole basis for the district court's determination that the requested materials need not be disclosed.

This exemption permits an agency to withhold records or information compiled for law enforcement purposes,[7] "but only to the extent that the production of such [materials] . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." § 552(b)(7)(C). The application of Exemption 7(C) requires the court to balance the privacy interest at stake in revealing the materials with the public interest in their release. Reporters Comm., 489 U.S. at 762; Maynard v. CIA, 986 F.2d 547, 566 (1st Cir. 1993).

## A.   The Privacy Interest

The privacy interest protected by Exemption 7(C) is not a "cramped" or limited notion of personal privacy. See Reporters Comm., 489 U.S. at 762-63. Instead, Exemption 7(C) protects a broad notion of personal privacy, including an individual's interest in avoiding disclosure of personal matters. Id. at 762. This notion of privacy "encompass[es] the individual's control of information concerning his or her person," and "when, how, and to what extent information about them is communicated to others."

---

[7] The materials subject to the FOIA request were provided by Koresko to aid in the investigation and prosecution of Carpenter's business activities by the USAO. The USAO, a law enforcement agency, has established a "rational nexus" between the "activities being investigated and violations of federal law" and the relevant documents. See Irons v. Bell, 596 F.2d 468, 472 (1st Cir. 1979). The record clearly supports, and the parties do not contest, that the documents were gathered for law enforcement purposes.

Id. at 789, 764 n.16. The individual, and not the agency in possession of the records, controls the privacy interest. See Reporters Comm., 489 U.S. at 763-65; Sherman v. U.S. Dep't of the Army, 244 F.3d 357, 363 (5th Cir. 2001) (providing that the individual controls the privacy interest at stake in FOIA exemptions).

Furthermore, where the provider of the information or records is a private individual, "the privacy interest . . . is at its apex." Reporters Comm., 489 U.S. at 780; Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 166 (2004). In Reporters Committee, the Supreme Court pointed to the provisions of the FOIA allowing the redaction of an individual's identifying information and the segregation of exempt portions of the record in concluding that the "disclosure of records regarding private citizens, identifiable by name, is not what the framers of the FOIA had in mind."[8] 489 U.S. at 765-66. The central purpose of the FOIA is to reveal government action, not to expose the actions of private third parties and their participation in law enforcement to the public. See id. at 774 ("[T]he FOIA's central purpose is to ensure that the *Government's* activities be opened to the sharp eye of public scrutiny, not that information about

_____

[8] Specifically, the Supreme Court pointed to Sections 552(a)(2) and 552(b).

*private citizens* that happens to be in the warehouse of the Government be so disclosed."). With this general understanding of the privacy interest protected by Exemption 7(C), we turn to the facts at hand.

Carpenter brought this FOIA action to compel disclosure of information or records *provided by or concerning* Koresko in connection with the Government's investigation and prosecution of Carpenter's business activities. We agree with the district court that a person need not be the subject of the investigation to have a substantial privacy interest in maintaining the secrecy of his involvement with the investigation. See Maynard, 986 F.2d at 566; Fitzgibbon v. CIA, 911 F.2d 755, 767 (D.C. Cir. 1990). Rather, precedents suggest that individuals maintain a privacy interest under the FOIA in their identity as government informants and in not being positively associated with a criminal matter. See, e.g., Maynard, 986 F.2d at 566; Fitzgibbon, 911 F.2d at 767.

Although Koresko is not, strictly speaking, a government informant, his privacy interest is analogous to that of an informant. This Court has long protected the identities of witnesses and informants in law enforcement records. Maynard, 986 F.2d at 566 (stating that "FBI agents, support personnel, confidential sources, and investigatory targets all have

-10-

significant privacy interests in not having their names revealed"); New England Apple Council v. Donovan, 725 F.2d 139, 142 (1st Cir. 1984); see also Fitzgibbon, 911 F.2d at 767 ("[P]ersons involved in FBI investigations - even if they are not the subject of the investigation - 'have a substantial interest in seeing that their participation remains secret.'").

While Koresko's identity is known and Carpenter alleges that he assisted the Government in its prosecution, it is a further invasion of Koresko's protected privacy interest to positively identify him with a given criminal matter and reveal the records or information that he provided. See Fitzgibbon, 911 F.2d at 767 ("[E]xemption 7(C) takes particular note of the 'strong interest' of individuals, whether they be suspects, witnesses, or investigators, 'in not being associated unwarrantedly with alleged criminal activity.'"). Koresko, as a private individual, maintains control over information concerning his person and his involvement with the criminal justice system, and he alone controls "when, how, and to what extent [that] information" will be revealed. Reporters Comm., 489 U.S. at 764 n.16.

Carpenter, however, asserts that Koresko has waived any privacy interest via his alleged involvement in the Government's prosecution. Plaintiff bases this contention on a letter from a Congressman attached to Koresko's motion to quash a subpoena in

an unrelated administrative proceeding. The letter stated: "I understand that Mr. Koresko has been of assistance to your office, the Boston office of the DOL/EBSA and Assistant U.S. Attorney Michael Pineault in the Boston office of the United States Attorney."[9] (Appellant App. 60.) This, at best, tenuous connection to the Carpenter investigation is insufficient to waive Koresko's privacy interest.[10] The assertion that Koresko's identity as an informant in the Carpenter investigation arguably can be determined from another source does not terminate his privacy interest. See L & C Marine Transp., Ltd. v. United States, 740 F.2d 919, 922 (11th Cir. 1984). That information has been released to the public domain, especially where the release is limited, has little bearing on the privacy interest. Reporters Comm., 489 U.S. at 763-64. Indeed, in modern society

---

[9] In addition, Carpenter points to statements made by Assistant U.S. Attorney ("AUSA") Pineault during the final pretrial conference for Carpenter's prosecution. AUSA Pineault referenced that Koresko filed a number of pleadings related to civil disputes between various individuals and companies and Benistar LTD. These statements, however, are not properly before the Court on appeal because Carpenter waived this argument by failing to raise it in his opening brief. See Levin v. Dalva Bros., Inc., 459 F.3d 68, 76 n.4 (1st Cir. 2006).

[10] AUSA Pineault was the prosecutor in charge of Carpenter's investigation and prosecution. AUSAs, however, handle numerous cases simultaneously, and the affidavit makes no mention of the specific case with which Koresko assisted AUSA Pineault.

-12-

there is little information that has not been released to another.  Id. at 763.

Thus, an intention by Koresko to waive his privacy interest cannot be distilled from an affidavit of a Congressman attached to his motion to quash a subpoena in an unrelated case. Similarly, the Sixth Circuit has found that FBI agents did not waive the protections provided by Exemption 7(C) by testifying at the FOIA requester's habeas proceeding.  Jones v. FBI, 41 F.3d 238, 247 (6th Cir. 1994) ("The fact that an agent decided or was required to testify or otherwise come forward in other settings does not give plaintiff a right under FOIA to documents . . . .").  Exemption 7(C) leaves the decision about whether and how to reveal personal information to the individual.  Reporters Comm., 489 U.S. at 763.  Because there is a valid privacy interest, the requested documents will only be revealed where "the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake." Favish, 541 U.S. at 172.

## B.    The Public Interest

Whether an invasion of privacy is unwarranted will "turn on the nature of the requested document and its relationship to 'the basic purpose of the [FOIA] to open agency action to the light of public scrutiny.'"  Reporters Comm., 489 U.S. at 772 (quoting

Dep't of the Air Force v. Rose, 425 U.S. 352, 372 (1976)). Neither the specific purpose for which the information is requested nor the identity of the requesting party has any bearing on the evaluation. Id. at 771; Fed. Labor Relations Auth. v. U.S. Dep't of Navy, 941 F.2d 49, 56 (1st Cir. 1991).

The asserted public interest must shed light on a federal agency's performance of its statutory duties. Reporters Comm., 489 U.S. at 773; Maynard, 986 F.2d at 566. Indeed, the "core purpose" of the FOIA, to which the public interest must relate, is to ensure that government activities are open to public scrutiny, not that information about private citizens, which happens to be in the government's possession, be disclosed. Reporters Comm., 489 U.S. at 774; Maynard, 986 F.2d at 566. Carpenter asserts that there is a valid public interest in "determin[ing] whether a business rival has provided the Government with false information about him" so that Carpenter can correct any misleading or incorrect information. (Appellant's Br. 8.)

To the extent Carpenter is seeking to obtain the documents that Koresko provided to the government, no public interest is served because reviewing such documents tells the public nothing about the actions of the government. Furthermore, Carpenter does not seek to determine how the government responded to the

-14-

information, but instead whether Koresko revealed any information or documents. In <u>Reporters Committee</u>, the Supreme Court held that the rap sheet of a Mafia boss was not the subject of public concern despite the allegation that the Mafia boss had obtained Department of Defense contracts through a corrupt Congressman. 489 U.S. at 774-75. The Court stated that the rap sheet would reveal nothing about the Congressman's behavior or about the conduct of the Department of Defense. <u>Id.</u>; <u>accord</u> <u>Maynard</u>, 986 F.2d at 566 (providing that the disclosure of the names of low-level FBI agents and support personnel would not reveal what the government is up to). Similarly, revealing any records or information supplied by Koresko, a private third party, would tell the public nothing about the actions of an AUSA or the Department of Justice. Further, were the Court to find a valid public interest here, virtually every criminal defendant or target of an FBI investigation would be entitled to FOIA disclosure by insinuating that the government had acted on false information.

Rather, the asserted public interest in those documents centers on Carpenter's criminal trial and his own innocence. Here, it is telling that Carpenter requested materials similar to those that are the subject of the FOIA request through discovery

in his criminal trial.[11] There is no public interest in supplementing an individual's request for discovery. NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978) (providing that the "FOIA was *not* intended to function as a private discovery tool"); New England Apple Council, 725 F.2d at 139. Further, the innocence or guilt of a particular defendant tells the Court "nothing about matters of substantive law enforcement policy that are properly the subject of public concern." Neely v. FBI, 208 F.3d 461, 464 (4th Cir. 2000) (holding that there is no cognizable FOIA interest in a defendant's need for information to establish his own innocence).

To the extent, however, that any of the requested material would reveal how the government responded to informants and others who offer information, a public interest might be served. Carpenter's request for "[a]ll documents that refer to, relate to, or reflect any conversation with . . . Koresko" could shed light on possible government misconduct. Nonetheless, Carpenter

---

[11] See supra note 5. Further, in Carpenter's Emergency Motion for Summary Judgment, he requested oral argument "as soon as possible because he need[ed] the requested documents to help him prepare his defense in United States v. Carpenter . . . ."

has failed to adequately support disclosure on that basis.[12]  As the Supreme Court held in Favish,

> where there is a privacy interest protected by Exemption 7(C) and the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure.  Rather, the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.

541 U.S. at 174.  Carpenter's bare suspicion does not amount to evidence sufficient to allow a reasonable person to believe that government impropriety occurred.

Because Carpenter has failed to establish a valid public interest in the disclosure of the requested documents and Exemption 7(C) protects the privacy interest of Koresko, we hold that Exemption 7(C) warrants that the requested documents be withheld in their entirety.

Because the lack of a public interest is determinative, we turn only briefly to Carpenter's additional arguments regarding the Vaughn index and segregation of exempt portions of the record.

---

[12] At various points in the litigation, Carpenter insinuated that the USAO engaged in selective prosecution.  Because Carpenter failed to raise this point in his opening brief, it is waived on appeal.  See Levin, 459 F.3d at 76.

## C. The Vaughn Index and Segregation

To provide for the broadest possible disclosure and further the adversary process, courts often require the withholding agency to provide a "Vaughn" index.[13] Church of Scientology Int'l, 30 F.3d at 228; Providence Journal Co., 981 F.2d at 556. Generally, a Vaughn index provides a broad description of the requested material or information, and the agency's reason for withholding each document or portion of a document. See Church of Scientology Int'l, 30 F.3d at 228. Nonetheless, a more detailed statement of the requested materials may not be necessary where the statement would reveal the very information sought to be protected. See Maynard, 986 F.2d at 557.

The Vaughn index provided to the plaintiff and the court in this case consisted of a declaration by John F. Boseker ("Boseker declaration"), an Attorney Adviser in the Executive Office for the United States Attorneys, United States Department of Justice. The Boseker declaration set forth the Government's Glomar response, asserted that the requested documents were not required to be disclosed under Exemption 7(C) and provided that there were no reasonably segregable portions of the materials. Because Carpenter failed to assert a cognizable public interest, the government was not obligated to provide additional detail. See

---

[13] See Vaughn v. Rosen, 484 F.2d 820, 824 (D.C. Cir. 1973).

id. Even if Carpenter had asserted a valid public interest, the appropriate method for a detailed evaluation of the competing interests would have been through an in camera review because a standard Vaughn index might result in disclosure of the very information that the government attempted to protect. Id. ("When, as here, the agency, for good reason, does not furnish publicly the kind of detail required for a satisfactory Vaughn index, a district court may review documents in camera.").

The FOIA further mandates that "any reasonably segregable portion of a record shall be provided to any person requesting such records after deletion of the portions which are exempt under [section 552(b)]." 5 U.S.C. § 552(b). Non-exempt information or materials may be withheld only where it "is so interspersed with exempt material that separation by the agency, and policing of this by the courts would impose an inordinate burden." Church of Scientology Int'l, 30 F.3d at 228 (quoting Wightman v. Bureau of Alcohol, Tobacco & Firearms, 755 F.2d 979, 983 (1st Cir. 1985)). The district court, in deciding that the materials were exempt from disclosure, failed to make an express finding that no part of the requested documents were non-exempt and segregable from exempt portions.

Nonetheless, the Court is satisfied that the in camera afforded the district court the opportunity to perform a review

of the documents in light of the asserted exemptions and make the required determinations regarding segregation.  See <u>Church of Scientology Int'l</u>, 30 F.3d at 233.  Further, having reviewed the documents, we find that there are no reasonably segregable portions.

**III. Conclusion**

For these reasons, the order of the district court is **<u>affirmed.</u>**